(86 App. Div. 517.)

DAVIE v. HEAL et al.

(Supreme Court, Appellate Division, Second Department. July 24, 1903.)

1. RELIGIOUS ASSOCIATIONS — RIGHTS OF MEMBERS — VOTING — OBJECTION — ESTOPPEL.

Where the members of a parent church had for several years permitted the members of certain chapels organized and conducted by the church to vote concerning questions relating to dispositions of current funds to which such members had contributed, and members of such chapels were permitted without challenge to vote on a resolution increasing the salaries of the pastors of such chapels, a member of the parent church was estopped to maintain a suit in equity to enjoin the carrying out of the resolution adopted by the vote of such members on the ground that they had no legal right to vote.

Appeal from Special Term, Kings County.

Action by James W. B. Davie against Peter P. Heal and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

John L. Hill (Robert L. Redfield, on the brief), for appellant.
S. F. Rawson, for respondent.

HIRSCHBERG, J. The plaintiff sues on behalf of himself, and all other members similarly situated, of the Moravian Church, known as the "United Brethren's Church," on Staten Island. The defendants are the church and its trustees, together with the presidents and the pastors, respectively, of the mission chapels located at Castleton Corners and at Giffords, on Staten Island; and the object of the action is to procure an injunction prohibiting the carrying out of a resolution increasing the salaries of the pastors at said chapels, adopted at a special meeting of the members of the church corporation on February 20, 1902. At that meeting there were 89 persons present and voting, 70 of whom voted in favor of the resolution and 19 against it; but it is the contention of the plaintiff that only stated attendants at services in the parent church edifice, located at New Dorp, were qualified voters, of whom only 12 were present, and whose votes were cast 2 in favor and 10 in opposition to the resolution. The resolution was accordingly adopted by the votes of those whose stated attendance at worship was either at the church edifice erected at Castleton Corners or at Giffords, and upon that fact is predicated the alleged invalidity of the resolution and the claim to equitable relief.

The religious corporation at New Dorp was created in 1808, under chapter 79, p. 161, of the Laws of 1801. In addition to its church building, it owns considerable adjoining property, which is used for cemetery and other purposes. The chapel at Castleton Corners was established in 1873, and the one at Giffords in 1877, the title to the respective properties being vested in the United Brethren's Church, there being no separate or independent incorporation of the chapels. The names of all persons who are admitted to membership in the church at the chapels are transmitted by the respective pastors of the chapels to the church at New Dorp, and such names are there enrolled upon the records of said church as members thereof. Weekly collections are taken at each chapel, and a monthly statement or report made to the treasurer at New Dorp of the receipts and disbursements. If there is a surplus it is paid to the treasurer; if there is a deficit it is paid by him. In addition to the weekly collections, each member, whether attendant at New Dorp or at the chapels, pays the sum of $2 per year to the general treasury. From the time the chapels were instituted, the five members of the board of trustees having charge of the temporalities have been elected two from New Dorp, two from Castleton Corners, and one from Giffords; and the three elders, who, with the pastors, constitute the board of elders having charge of the spiritual concerns of the church, have been elected one from each of the three congregations. During this entire period, also, the members who worship at the chapels have voted at the meetings of the corporations, without apparent

question, objection, or protest, nor does it appear that at the meeting of February 20, 1902, the right of any individual to vote was challenged in any manner, or that any protest against the same, or objection thereto, was made by the plaintiff or by any other person. The resolution was adopted in accordance with the uniform practice of the church members in the voluntary regulation of the executive affairs of the corporation, on the theory that the members of the three congregations constituted but one religious organization, having a common interest and entitled to a voice in common.

It is not clear from the evidence whether the chapel members were legally entitled to vote, nor in the view I take of the case is it necessary to determine the question. The learned counsel for the appellant claim that the chapels were established under chapter 657, p. 1688, of the Laws of 1867, entitled "An act to authorize the erection of free churches or chapels in certain cases." This act was repealed by the religious corporations law (chapter 723, p. 480, Laws 1895), section 6 of which is the apparent substitute for the law repealed. There is no evidence in the case showing that the chapels were established under the act of 1867, and the learned trial justice has found as a fact that neither chapel was acquired for any of the purposes mentioned in section 6 of the act of 1895, supra. In this state of the proof, and in view of that finding, it is unnecessary to analyze the restrictions upon the voting rights of members of chapels, or other branch religious institutions, imposed by the two statutes referred to. It may be noted, however, that the learned trial justice has also found as a fact that the stated attendants at the chapels are all actual members of the congregation and church at New Dorp, which finding can hardly be said to be without some support in the voluntary acts of the officers and members, by which, as recited in a resolution unanimously adopted by the trustees in 1892, the "congregation in all its various parts in the worship at New Dorp, Castleton Corners, and Giffords," has been always recognized "as constituting one organic church."

But, as I have said, in the view taken of the rights of the parties to this controversy, it seems unnecessary to determine the extent of the strict legal rights, if any, of the persons whose votes are now indirectly challenged by the plaintiff. There is no question of title to property involved, as his counsel admit in their brief. No question is presented such as might be raised in an attempt to incumber the property of the corporation by mortgages. The sole underlying question relates to the current disposition of current funds, the annual distribution of annual contributions, in which the votes of the members now challenged may be easily regarded as a limitation placed by them upon the use of the contributions; and, where all who have contributed have been invited to a voice in the determination of the distribution, it would be inequitable to permit subsequent recourse to the courts for the purpose of invalidating the result, especially where that result has been reached without challenge or protest. The persons who have claimed and exercised the right to vote are not parties to the suit, and cannot, of course, be heard in their own behalf. The plaintiff's grievance is not so much with the

fact that the chapel members voted, as it is with the way they voted. If, under the circumstances, the courts could be successfully appealed to to interfere, the result would be intolerable. Not only the vote of 1902, but that of previous years, could be assailed, and only a statute of limitations could protect parties from loss who may have acted in good faith upon the strength of a custom which appears to have been developed during more than a quarter of a century in a spirit of commendable union and harmony. Whether the right to vote has been or could be conferred by such custom may perhaps be doubtful, but there can be little doubt that the right to invoke the arm of a court of equity may be lost where the right is not promptly asserted, where its maintenance is in conflict with the general principle of equity, and where its enforcement can only accomplish a moral wrong.

I therefore advise that the judgment be affirmed.

Judgment affirmed, with costs. All concur.